Good morning, your honors. My name is Rex Smith. I represent the plaintiff, please the court and counsel. I have about three minutes of prepared remarks. And of course, if you want to interrupt with a question at any time during the prepared remarks, certainly invite that. The roadmap I'd have for you for the prepared remarks are, first of all, to identify the one issue that was ruled on by the district court and then to outline the conduct on the part of the defendant that was involved in connection with that first issue and then to discuss the district court's decision. The one issue that the district court actually ruled on was whether the defendant's conduct was legally outrageous. The record in this case reflects that this was the conduct that was involved. The plaintiff in this case, Debra Pittman, had worked for several years up the road at a hospital doing clerical work. Over the course of her doing that, she'd pulled and pushed on a cart with her left arm and shoulder about 125,000 times. She tore a tendon in her left shoulder. She filed a work comp claim. When she filed the claim, the defendants that have an office in the suburb here in Portland sent out a field investigator to the where she pushed and pulled on this cart 125,000 times. And then the defendants sent the same field investigator from this local office to Debra Pittman's apartment. And the field investigator took a that Debra Pittman had pushed and pulled on this cart 125,000 times over all those years. The defendants denied that they were responsible for this torn tendon in her left shoulder. Under state law, there was a work comp hearing scheduled on a 90-day time frame from when Debra Pittman requested a hearing on this denied claim. The reason for the 90 days is because when you've got working people with no safety net and they got an injury and they got to have surgery and they're not getting paid their wages, the was set up to where these folks can get a hearing in 90 days so that they don't get put into a starve-out situation to be taken advantage of by an insurance company. This hearing was scheduled for February 9 of 04. On February 4 of 04, the defendants arranged for a phone conference with an administrative judge, and they requested that that judge indefinitely postpone the scheduled hearing because the defendants claimed they had no video taken three months earlier. They had no reported statement. They were shocked and surprised and completely unprepared to go to a hearing where they would have to deal with the question about 125,000 pushes and pulls on this card accounting for this torn tendon. Now, the record in this case indicates that the attorney representing these defendants at that time had represented to Debra Pittman's attorney, represented to the judge, and did it innocently. He did it innocently in representing that the defendants don't have a recorded statement, don't have a videotape. They're completely surprised. On the facts in this case, with a local claim office, one claim adjuster from the very beginning, an electronic claim record of sending out this field investigator, getting the videotape, getting the statement, and then, obviously, when they got their set over and Debra Pittman was thrown this lowball, starve-out offer, $10,000, your surgery, your wages, your job, your health care, when she said, no, I'm going to hang in there. If I've got to wait a year, I've got to wait a year. Then all of a sudden, okay, well, we've got the videotape, we've got the statement, and, by the way, unconditional surrender, we'll go ahead, we'll accept your claim, we'll pay for your surgery, and so on. That's the factual setting. Now, the ruling of the district court was as follows, and this is at Excerpt of Record 210. This quoting, although no reason can justify the intentional concealment of the evidence, the alleged misconduct by defendants simply does not fall sufficiently outside the bounds of socially tolerable conduct to state an IIED claim, an outrageous conduct claim. Is it your view that every time that a defendant that fails to disclose evidence it has to the lawyer is, when the lawyer makes a preliminary transgression, every time that there's a failure to disclose the existence of evidence. No, absolutely not. There's a wide spectrum, all the way from innocence to negligence to, to, to, sorry? Deliberate. All the way to what is here, I'm sorry. Yeah, what is it here? How do you describe it? Deliberate, knowing, intentional, but more than that, the inference in this case is that just as the district court wrote a couple of pages earlier, but not in the dispositive section, and that was that the defendant's conduct was engaged in, quoting, to maliciously conceal evidence for the purpose of engineering an indefinite setover of the hearing gate to soften Pittman up for an unreasonably low settlement offer. Judge, there's, the, the role of the court, before it ever gets to a jury, is a gatekeeper. When is the conduct so bad that it raises to the level of outrageousness when an insurance company, by design, deliberately engineers a circumstance where a setover occurs that will trigger a year of delay, putting a mother of two in a situation where she's looking at trying to accept next to nothing as survival money to get by for a short period of time? I'd like to save a little bit for rebuttal. Good morning, Your Honors. Mick Seidel on behalf of Travelers and Constitutional States. As there was in the district court, there's a lot of Obviously, we know that the issue here is the district court's decision in which she said that, properly, simply seeking a postponement of a worker's Well, that's a, that's an interesting issue. And I, I believe if you read the record, Mr. I, I believe it, it fairly is the, is, was the, the employer's lawyer. I, I would like to point out, though, that the, the record is fairly clear in terms of what the basis of the ALJ's decision to allow a postponement was. And with all due respect to Mr. Smith's rendition of the facts, the issue for the postponement had not to do with some allegation of intentional disclosure of information, because the information that we're talking about was known to Ms. Pittman. She was interviewed. In other words, the recorded statement, she was, she was the person being recorded. But wasn't it based upon information they had from that interview and from that videotape? I mean, their request for a continuance, the reason for it could have been developed. I mean, the information they wanted was in that videotape and in that statement. Isn't that true? Well, Your Honor, here's, here's the issue. I think if you read, if you read the ALJ's letter in which he grants the postponement, which is at, it's at excerpt of Record 99, is the actual ruling allowing the postponement. The issue was not, it didn't have to do with a discovery dispute per se. And it's not that the information in the recorded statement or the videotape, which hadn't yet been transferred to the lawyer who was assigned to the contested case. What, what it had to do with is this. The original claim had been an occupational injury. In other words, something that happened on the is that it had not been a claim for occupational disease, which under Oregon's workers' compensation system is a different type of claim. It is that now that the claim had been structured that because of repetitive use of pulling and pushing a cart, that there had been developed in that process an occupational disease, which is defined as a different type of claim. And if you look at the administrative law judge's ruling on the postponement, he agrees with the defendant's attorney that Mr. Smith had not, had not made clear that this was now an occupational disease claim and not just an occupational injury claim. And then he goes on to, to, to in the administrative process. Are they going to be separate or are they going to be single claims? And, and that's, that is the basis of the administrative law claim, judge's ruling that there had not been sufficient notice. In other words, the defendant was surprised that the nature of this claim had now changed from one of injury to one of occupational disease. And, and, and it's, I guess it's somewhat ironic that the first two circuits review of administrative law judge rulings. With all due respect, this is not the time or place for anyone to second guess a administrative law judge's decision in an Oregon workers' compensation claim. Because if we're going to go down that route, you can obviously see the kind of problem that we would have if an intentional infliction of emotional distress tort claim under Oregon law, that is to say if the conduct of the litigants and the ultimate decision making by the administrative law judge were to constitute a tort, we, we would have all kinds of cases in this court in which you would be trying to second guess why an administrative law judge did what he did or she did what she did. What Judge Stewart ruled in the district court was this is a matter that was dealt with in an administrative law system. There are rules, there are in the context of that administrative system. And she simply correctly found that as a gatekeeper in the district court, that these facts did not give rise to an extra contractual or tort type of claim because it did not meet the level of extraordinary transgression of the bounds of and what was motivating people. This was all dealt with properly inside of and part of an administrative proceeding. In addition to that, the district court did not need to reach, but we fully briefed below and we fully, and we briefed here, the issue that we're really talking about assigning tort liability to communications between counsel in a discovery dispute that ultimately is resolved by an administrative law judge. And that type of communication is exactly what Oregon law protects from tortious, from, from tort claims because once again, we would be opening the door to all kinds of, of tort claims if we had litigants who had, after a case is resolved, the ability to go back and sue the lawyers or sue the parties for what they said or did in the context of the litigation. So on behalf of travelers, we ask that the district court decision be affirmed unless the, the court has any further questions on this position. What about the conduct of your insurance adjuster? What will you do about that? Well, the, the, the, the, just the adjuster is, is actually the claims administrator. The employer was Providence Hospital. And so this is not an are, are really not factually relevant because this is not, this arises out of an, a relationship in which. What about, what about the lie that was told? And, and the, the lie being that, that, that the lawyer, the lawyer for travelers did not have in his possession the, the videotape. I'm not sure exactly what. Well, you heard, you heard what the. I understand that. And all, all I'm, all I'm trying to respond, Your Honor, is there, there's really no record of what it is that he's saying was said or not said. What there, what there is, is a record of a request for a postponement and the reasons for that postponement. And what Mr. Smith did respond in connection with that actually. The reason for the postponement again was what? Was because the nature of the workers' comp claim had changed from the initial notice being an injury claim to one of occupational disease. And what the, what the traveler's attorney asked for is additional time because, and it's all, this is all reported in the ALJ's letter, is that there had not been sufficient notice that the nature of this workers' comp claim was now a repetitive use type of claim, which is a disease claim. It's not on a particular day for a particular instant, I was injured by something falling on me or, or that, you know, some particular type of injury. And that, Your Honor, is the reason why the ALJ granted the, the postponement. And then the case was ultimately settled once that claim in its proper context was understood. And at that point is when the claim was settled on, on mutually agreeable terms. So there's now an attempt to go. Nothing, nothing came up about the tape? Nothing. I don't know. I don't believe anything. Now, there was a, there was. This is all made up? Well, it's not, I'm not, I'm not suggesting it's made up. I'm suggesting that it is not supported anywhere in the record. There, there, there was, now, there is a process in the workers' comp system for, and they took advantage of the, of the statutory process to go back and say, well, there was discovery that we didn't get and we think that there ought to be a sanction imposed. And the ALJ later agreed that there was a $5,000 or $6,000 payment that should be made because there was discovery that should have been provided to the, the claimant. That, again, is part of the, of the system. That's the remedy. That's the redress that was available and the redress that was taken advantage of. But what I'm, would like to suggest, Your Honor, is that in reading the ALJ's reasoning, it was not because there had been a request for discovery that had not been complied with. It was the nature of the claim that the claimant had asserted and described. Now, we don't, we don't criticize the claimant for that. That, that, that is just simply part of the process. If you change the nature of your claim, you change the nature of your claim. One of the consequences of changing the nature of the claim is your originally scheduled hearing might be postponed if a neutral, a neutral fact finder finds sufficient basis for that postponement. I would suggest that that postponement not be something that anyone here attempt to get behind in terms of the ALJ's reasoning. To the extent we do, it's all set forth in a letter, and that's at ER 99. So, I hope I've addressed that. Why, why shouldn't this issue go to a jury? Because the gatekeeping function is important at the district court level. If this kind of case were to go to a jury, then, then there are all types of, of cases in which litigants in litigation disagree with, with what's produced in discovery or why people are giving us the floodgates. Well, it is, it is, it is certainly in part that, but I also believe that it's, it's the gatekeeping function. Well, are you saying that there's nothing, if I heard you, I, I thought you were saying that there's nothing in this record to show that the insurance company requested, wanted a, asked that there be a continuance in order to hide the fact that they have this tape or in order to wear down the, the plaintiff for a possible favorable settlement? No. In fact, quite. That is your position? Yes. And, and the letter requesting the postponement is in the record. Now, Mr. Smith's response letter is not, but the letter requesting the postponement is there. And there's nothing. Read me, read me the language that the judge used again. Okay. The language. That said this was really terrible and bad and all that, but I'm the gatekeeper. Okay. Read that again, would you please? Now, you're talking about the language of the district court regarding, regarding the allegations? Yes. Okay. The thing is the plaintiff, the defendant, the plaintiff stated that she was reciting the allegations that were being made. She wasn't reciting any findings that she was making. She was reciting that the allegations of the plaintiff are as follows, and then she recited them, and I'm sorry but I don't have the exact language. But, but that was simply, that was simply a recitation of what the plaintiff had been alleged. And her actual finding, Your Honor, is as I read earlier, that simply seeking a postponement from a neutral fact finder in discovery or in a discovery, I'm sorry, from a neutral decision maker is neither outrageous nor extremely, or extreme conduct. That was the finding of the district court. She wasn't making any findings other than that. And, but I, but I would. But she did, was, I say she. There was a sanction on the insurance company for its failure to disclose this information, which it had an obligation to disclose even prior to the request for continuance. But, but I, but I think the distinction, that's correct. And what was the language of the court there in making that assessment? That, that ruling is in here. Page what? I believe, I'm, I'm sorry, I think, I don't have the exact, I thought I had it, but I don't. I can certainly, I can certainly provide that to you. But it is in this record. And I, the distinction that I would want to draw, Your Honor, is this. That the discovery dispute was not the basis of the postponement. Again, if, if I could just quote from the actual letter of, of February 4, the actual postponement order. The employer seeks additional time to process the claim as an occupational disease. And states that the employer had only been advised of that on January 20, 2004, which was less than a month earlier. It goes on to say the postponement, and, and cites cases that postponements are always granted in order to allow the parties to present all theories on the same proceeding. And then goes on to cite cases for that proposition. So the issue in front of the ALJ was not whether the, the claim ought to go to hearing as, as alleged because of a discovery dispute. The basis of the, maybe I'm making this too many times. The basis of the ruling had to do with the nature of the claim that had been alleged. I, I, I, I think we understand. Okay.  You went way over time. Thank you. Your Honor, you're exactly correct that after the unconditional surrender on the part of this insurance company, go ahead and accept the claim, pay the benefits. There were additional proceedings in front of an administrative law judge. The administrative law judge, through the book, it was about 2,400 and some dollars in penalties. And the penalty was based on a spectrum of unreasonableness. This went to the extreme. It was a maximum penalty. And here's the key to the whole thing, is that this claimant, she just, on her own, without counsel, she files a notice that says, I've got a, a torn leg, tendon in my left shoulder. The insurance company sends out a denial letter. And you've got that in your record. The denial denies an injury. It denies an occupational disease. Here's a critical part of it. The, the, there's a judge on the phone on February 4, 06. Now, that's not a reported conversation, but I, but I created a record by, by writing several letters. Those are also in the record. Here's the long and the short of it, is that during that hearing, the, the judge wants to know what's really going on here. Why does the, the insurance company want more time? And what is going, this is the guts of it, is that going to this judge, is that I'm saying over and over again, they've got the recorded statement. They've got the video. They've had it for months. Their attorney wrote a letter months ago saying to the doctor who's going to do an IME, look at the repetitive overuse situation. I'm saying, judge, there's no reason for a postponement. It's a pretext. They're trying to get this thing set over for a year so they can starve this woman out. That's what's in the record. All right. What, what, can I just ask you, the district court said all of that. At worst, the factual allegations are that they obtained, succeeded in obtaining a continuance of the hearing because their agents lied about the existence of the videotape. And then the district court also said that those facts were not nearly as egregious as the two cases that you rely on, where there was a direct lie to the insured by the insurance company. And I just, and that in this case, Pittman's attorney knew the defendants were not being truthful about the absence of, lack of the tape, and nothing was concealed from Pittman. So where, legally, what is the strongest authority for, for, for your position? Please stop pounding on the facts. The Oregon Supreme Court, the Oregon Court of Appeals have repeatedly indicated outrageous conduct, gatekeeping. It's fact specific. Is this, is this that, does this rise to that level of outrageous conduct? Judge, it's, it's beyond it. It is just to lie to a judge and to conceal evidence from a judge on making a critical decision. I thought the attorney was the one who made an innocent representation to the judge. Because the defendants are the ones, they, they concealed it from their own attorney. Okay. I, I do, I do understand. I, I understand. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the last case for argument, which is Hanaya v. McCasey. Appreciate your passion. Yes, I, I just can't pronounce it. It's Hanaya, is that how you pronounce it? Yes, Your Honor. All right. Thank you. Hanaya v. McCasey.
judges: Schroeder, Pregerson, Strom